Schwartz v.Merrill Lynch & Co.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2010

(Argued: May 26, 2011                                    Decided: November 30, 2011)

Docket No. 10-0826

_____

ROBERTA SCHWARTZ,

Plaintiff-Appellant,

- v. -

MERRILL LYNCH & CO, INC., AKA MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC.,

Defendant-Appellee.

_____

Before:  KEARSE, SACK, and KATZMANN, Circuit Judges.

Appeal from a judgment of the United States District Court for the Southern District of New York, William H. Pauley III, Judge, denying petition, based on the retroactivity provision of the Lilly Ledbetter Fair Pay Act of 2009, to vacate an arbitration award. See 2010 WL 517585 (S.D.N.Y. Feb. 8, 2010).

Affirmed.

SUZANNE E. BISH, Chicago, Illinois (Linda D. Friedman, Patricia A. Bronte, Stowell & Friedman, Chicago, Illinois, on the brief), for Plaintiff-Appellant.

CAROLE G. MILLER, Birmingham, Alabama (Jeffrey A. Lee, Maynard, Cooper & Gale, Birmingham, Alabama; Ronald C. Minkoff, Frankfurt Kurnit Klein & Selz, New York, New York, on the brief), for Defendant-Appellee.

KEARSE, Circuit Judge:

Plaintiff Roberta Schwartz appeals from a judgment of the United States District Court for the Southern District of New York, William H. Pauley III, Judge, denying her petition to vacate an arbitration decision that rejected her claims asserting principally that defendant Merrill Lynch & Co, Inc. ("Merrill Lynch" or the "Firm"), her employer, discriminated against her on the basis of gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). The arbitration panel, considering Schwartz's allegations that discrimination had occurred between October 2000 and 2005, concluded that Schwartz had not proven a violation of federal or other laws pertaining to gender discrimination. Schwartz petitioned in the district court to vacate that decision, arguing principally that the arbitrators' refusal to consider evidence of allegedly discriminatory acts by Merrill Lynch prior to October 2000 was contrary to the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (or "Fair Pay Act"), which retroactively overruled the Supreme Court's decision in Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618 (2007) (or "Ledbetter"). The district court denied Schwartz's petition, finding that the arbitrators' rejection of her claims was not based on Ledbetter and concluding that there were no grounds under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), for vacating the decision. On appeal, Schwartz principally pursues her contention that the arbitrators' decision should be vacated in light of the Fair Pay Act. For the reasons that follow, we affirm the judgment of the district court.

# I. BACKGROUND

The following facts do not appear to be in dispute.

A. <u>The Parties and the Prior Settlements</u>

Merrill Lynch is in the business of providing financial services, including retail brokerage services. Schwartz has been employed by Merrill Lynch as a financial advisor ("FA") since 1980.

During Schwartz's tenure as a Merrill Lynch FA, it was the Firm's policy to compensate FAs (formerly called financial consultants) on the basis of their respective "production credits," which were based on the total commissions generated by each FA for the Firm from his or her client accounts. The accounts of an FA who leaves the Firm, dies, or retires are normally distributed to other FAs at that Merrill Lynch office in accordance with the Firm's Account Distribution Policy (or "ADP" or "ADP Policy"), which, since mid-2001, has involved a ranking system that calculates ADP scores by taking into account such factors as the FAs' education, revenues generated, membership in Merrill Lynch "recognition clubs" based on revenue production, and generation of new assets. If the departing FA was a member of a team of FAs, those client accounts may instead be distributed to the members of his or her team.

In 1997, Schwartz was a member of a class of women who sued Merrill Lynch alleging principally that the Firm engaged in gender discrimination by steering lucrative client accounts disproportionately to male FAs rather than female FAs, thereby causing female FAs to have fewer production credits, and hence lower earnings, than comparably qualified male FAs. <u>See</u> <u>Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, No. 96 C 3773 (N.D. Ill. Amended Complaint, Feb. 27, 1997) ("<u>Cremin</u>"). The <u>Cremin</u> action was settled on a class-wide basis in 1998, with Merrill Lynch

agreeing to adopt new standards to ensure that client account distributions would be designed to serve the interests of Firm customers based on nondiscriminatory standards.

In the settlement, Merrill Lynch also agreed, inter alia, to create two new dispute resolution mechanisms: a Claims Resolution Process ("CRP") in which members of the class could pursue their Cremin claims before neutral mediators and arbitrators, and an Employment Dispute Resolution Program ("EDR") that gave female FAs the option of presenting to neutral and independent arbitrators any future claims. The rules adopted to govern proceedings under the EDR program ("EDR Rules") provided, inter alia, that the Arbitrators "shall be governed by and required to follow the applicable law" when making awards (EDR Rule III(43)), and that any arbitral award "will be final and binding and may be enforced under the Federal Arbitration Act (Title 9 U.S.C.) and shall be reviewable only under the standards of the Federal Arbitration Act" (EDR Rule III(44)).

Following the settlement, Schwartz pursued her Cremin claim against Merrill Lynch through the CRP. She and the Firm settled that claim in a Settlement Agreement and Mutual Release, executed by Schwartz on April 2, 2001 ("Release" or "CRP Release"). The Release--which was submitted to this Court under seal and is hereby deemed unsealed only to the extent that it is quoted or described in this opinion--stated that Schwartz, defined as "Claimant,"

> irrevocably and unconditionally waives, releases and forever discharges Merrill Lynch [and others defined therein as "Releasees"] with respect to any and all claims, rights, obligations, liabilities, promises, agreements, demands and causes of action of any kind whatsoever, in law or equity, whether known or unknown, existing or contingent, suspected or unsuspected, apparent or concealed (herein collectively "claims"), Claimant now or in the future may have against Merrill Lynch or Releasees for, upon or by reason of any matter, cause or thing whatsoever to the day of the date she executes this Settlement Agreement and Mutual Release including, without limitation, any and all claims arising out of or relating to Claimant's employment, compensation and benefits with Merrill Lynch . . . .

(Emphases added.)  The Release stated that Schwartz was "not releas[ing] . . . any claim that arises from events occurring after the date of this [Release]."

B.  <u>Schwartz's New Claims and the Arbitrators' Decisions</u>

In 2003, pursuant to the EDR, Schwartz sought mediation of claims asserting that Merrill Lynch had continued to discriminate against her as a female FA despite the <u>Cremin</u> settlement and that the Firm had retaliated against her for participating in the <u>Cremin</u> class action.  When mediation failed, Schwartz's new claims were submitted to arbitration in December 2004.  Schwartz contended principally that Merrill Lynch continued to deny her valuable assets and resources, including account distributions and managerial and administrative support, on the basis of Account Distribution Policy credits.  She argued that this practice institutionalized the pattern of discriminatory conduct that had occurred during the pre-<u>Cremin</u> era:  men were always ranked higher than women because years of discrimination in their favor had provided them with accounts that allowed them to generate greater production credits than women, and by reason of those rankings their ability to receive larger client accounts than those distributed to women was perpetuated.  Schwartz also asserted that Merrill Lynch had denied her equal opportunities to team with other FAs, and that two of its branch managers had allowed male FAs to form sham teams in order to enable the male FAs to receive the client accounts of their departing team members.  She alleged that this conduct, bypassing the ADP Policy, further increased male FAs' ADP scores by reason of their receipt of such accounts.

Merrill Lynch promptly moved, <u>inter alia</u>, to confine Schwartz's EDR arbitration to events subsequent to Schwartz's CRP Release.  In April 2005, Arbitrator Carol Wittenberg, the single arbitrator before whom the matter was then pending, ruled that Schwartz's claims arising from events

that occurred before April 2, 2001, were barred by the Cremin settlement and the Release, but that Schwartz could offer evidence of events that occurred shortly before that date if they were relevant to her claims of discrimination on or after that date:

> [Merrill Lynch] seeks to bar all claims that occurred prior to Claimant's Settlement and Mutual Release of Claims against Merrill Lynch dated April 2, 2001. Claimant asserts that she seeks recovery only for new claims and new injuries occurring after April 2, 2001. Claimant argues, however, that evidence regarding events that occurred prior to April 2, 2001 may be relevant and admissible to such claims, including claims of a hostile work environment.

> The Arbitrator concurs that the only claims for which Claimant may seek recovery in this proceeding are claims that occurred subsequent to April 2, 2001, Claimant's Settlement and Mutual Release of Claims. However, Claimant may seek to introduce evidence of events occurring in close proximity to that date only if reference to such prior event(s) is relevant to the current complaint.

(Order of Arbitrator Carol Wittenberg dated April 6, 2005, at 1-2 ("Wittenberg Order").)

Hearings on Schwartz's claims, before a three-arbitrator panel chaired by Arbitrator Wittenberg (the "Panel"), were scheduled for the spring of 2008. In May 2007, the United States Supreme Court issued its decision in Ledbetter v. Goodyear Tire & Rubber Co., dealing with the time within which a federal claim of discriminatory compensation must be filed. The Court ruled that "[b]ecause a pay-setting decision is a 'discrete act,' it follows that the period for filing an EEOC charge begins when th[at] act occurs." Ledbetter, 550 U.S. at 621 (emphasis added). The Court rejected the contention that each pay check issued to the plaintiff constituted a cognizable act of discrimination, concluding that "when the disparate pay is received during the statutory limitations period, but is the result of intentionally discriminatory pay decisions that occurred outside the limitations period," the claim for discrimination in salary in violation of Title VII is time-barred, id. at 623 (internal quotation marks omitted).

Prior to the presentation of evidence at Schwartz's arbitration hearing before the Panel, Merrill Lynch moved in limine to preclude evidence it anticipated Schwartz would offer with respect to events that preceded the April 2001 Release. Merrill Lynch argued that such evidence was precluded not only by the terms of the Release but also by the Supreme Court's decision in Ledbetter. In opposition, Schwartz argued that evidence of events prior to April 2001 was needed to show that Merrill Lynch's post-Cremin practices used criteria that were tainted by its pre-Cremin gender-discriminatory practices, with its post-Cremin FA-ranking devices "institutionalizing the distributions that took place during the Cremin period" (Arbitration Hearing Transcript ("Tr."), at 15-16; see also id. at 56 (urging the relevance of evidence as to the conduct of a Merrill Lynch branch manager "going back to '97 and '99")). Merrill Lynch pressed its argument based on the Release:

> We're dealing with a claim that has been released. She has released her claim as of April 2001 . . . and it's gone and events that happened prior to that, . . . they're inadmissible.
>
> If you've released that claim, you can't then come and offer evidence relating to things that you've released. And here we're talking about facts that are two years prior to the release.

(Id. at 22-23.)

The Panel, pointing out that "the chair ha[d] already ruled" that Schwartz's case "starts with April '01" and that Schwartz would not be permitted "to go back and relitigate Cremin" (id. at 39), decided that the testimony of two of Schwartz's proposed witnesses would be "excluded because the time period when they were at Merrill Lynch is too remote to our date of April 2, 2001" (id. at 58), but that two other proposed witnesses "may testify as long as their testimony [related] to events" that occurred "in close proximity to the date of April 2, 2001" (id.). In the course of the hearing, the Panel decided that events occurring not more than six months before April 2, 2001, would

meet the "close proximity" test. (See, e.g., id. at 205, 215-16, 361; see also id. at 630-32 (excluding, under that test, evidence of an August 2000 communication offered by Merrill Lynch).)

The hearing was held on May 12-16 and August 18-21, 2008. In a Decision and Award dated November 4, 2008 ("Award"), the Panel began by stating that Schwartz's Release had "sharply restrict[ed] the scope of the claims" that could be addressed by the Panel and that Schwartz's argument "that Merrill Lynch discriminated against her during the actionable period by relying on objective criteria which she claims were 'tainted' by acts of discrimination prior to her settlement" was "foreclosed by her settlement and release." (Award at 2.) As to the merits, the Panel majority discussed the evidence in detail (see id. at 4-20) and concluded that Schwartz "ha[d] not established a violation of federal, state or local law pertaining to gender discrimination, retaliation, or breach of contract, or any other violation of law" (id. at 21). Arbitrator Wittenberg dissented from the merits decision, stating her view that Schwartz had proven discrimination in violation of Title VII and the New York Human Rights Law between the summer of 2003 and October 2005. (See Award at 21-28.)

C. The Fair Pay Act and Schwartz's Petition To Vacate the Award

In late January 2008, Congress passed--and the President signed into law--the Lilly Ledbetter Fair Pay Act to overrule the Supreme Court's decision in Ledbetter. The Fair Pay Act provides that "an unlawful employment practice occurs, with respect to discrimination in compensation in violation of [Title 42 of the U.S. Code]" not only when the discriminatory compensation decision is made, but also when the victim of that decision "is affected by application of" that decision, "including each time wages, benefits, or other compensation is paid, resulting in

whole or in part from such a decision or other practice."  Pub. L. No. 111-2, § 3, 123 Stat. 5, 5-6.

Congress made the Fair Pay Act retroactive with respect to claims under, inter alia, Title VII that were pending on May 28, 2007, the day before the Supreme Court decided Ledbetter.  See Pub. L. No. 111-2, § 6, 123 Stat. 5, 7.

On February 2, 2009, Schwartz filed her present petition in the district court to vacate the Panel's Award, arguing, to the extent pertinent to this appeal, that since her claim was pending on May 28, 2007, the Panel's decision to exclude evidence of Merrill Lynch's pre-Cremin conduct was "clearly contrary to the new [Fair Pay] Act" (Petition To Vacate Arbitration Award ¶¶ 19, 24).  The district court, in a Memorandum & Order dated February 8, 2010, reported at 2010 WL 517585, denied the petition, finding that Schwartz had identified no grounds under the FAA for vacatur of an arbitration award and no manifest disregard of the law by the arbitrators.  The district court found that there was no violation of the letter or the spirit of the Fair Pay Act because the arbitrators had rendered their decision months before passage of the Fair Pay Act, and they neither had relied on Ledbetter nor had failed to apply the law as it existed at the time of the Award:

> [T]he Panel decided to limit recovery on the basis of Schwartz's "full release of her claims to . . . [April 2, 2001]," not because of the Supreme Court's decision in Ledbetter . . . .  The matter ultimately was an issue of contract law and the scope of Schwartz's 2001 "full release."  Indeed, the Final Award gives no attention to Ledbetter.  Even assuming the [Fair Pay] Act overrode Schwartz's contractual release, the arbitrators issued the Final Award in November 2008, prior to the passage of the [Fair Pay] Act. See Brown v. Rauscher Pierce Refsnes, Inc., 994 F.2d 775, 781-82 (11th Cir. 1993) (panel's interpretation of law must be wholly unfounded at the time it is rendered to justify vacatur); see also Sobel v. Yeshiva Univ., 839 F.2d 18, 29-30 (1988) ("[I]t is beyond question that a pending case must be decided under the law in effect at the time it is decided.").  A change in the decisional law after the entry of a final award is not grounds for vacatur.

2010 WL 517585, at *4. The court also found that the record did not support Schwartz's contention that the Panel had disregarded relevant and admissible evidence of past discrimination:

> The record shows the Panel accepted evidence of the Cremin Settlement which detailed earlier discrimination at Merrill Lynch. Moreover, the record reveals that the Panel remained flexible about accepting evidence of pre-April 2001 activities so long as it was relevant.

Id.

## II. DISCUSSION

On appeal, Schwartz contends principally that the Award should be vacated as a matter of law on the ground that, based on the Supreme Court's decision in Ledbetter, she "was denied important legal rights provided by Title VII and the Fair Pay Act, namely, the opportunity to present and recover for her claims that she lost substantial compensation during the actionable liability period based on or related to discriminatory decisions and acts that pre-dated the charge filing period" (Schwartz brief on appeal at 37; see also id. at 40 (the Fair Pay Act "allows recovery under Title VII for acts that transpired prior to the liability period if they diminish compensation during the liability period")). Schwartz claims that "[a]t the outset of the hearing, the Arbitrators accepted Merrill Lynch's Ledbetter argument" (Schwartz brief on appeal at 23). She asserts that

> Merrill Lynch relied heavily on the Supreme Court's decision in Ledbetter . . . .

> Based on Merrill Lynch's argument, the Arbitration Panel . . . prevented Schwartz from introducing any evidence regarding Merrill Lynch's discriminatory practices prior to October 2000, and barred Schwartz from recovering for Merrill Lynch's discriminatory conduct after April 2001 if the challenged conduct relied on or related to acts occurring before October 2000.

(Schwartz brief on appeal at 12.) Schwartz argues that the Award should be vacated as a matter of public policy because her "claim was pending as of May 28, 2007" (id. at 13; see, e.g., id. at 46-52),

and "Congress expressly mandated that the Fair Pay Act apply retroactively to all claims of compensation discrimination pending on or after May 28, 2007" (id. at 13). She also argues that "[if she] had chosen to litigate her claim in federal court, she would be entitled to relief under Federal Rule of Civil Procedure 60(b) from any judgment based on the congressionally overruled decision" (Schwartz brief on appeal at 46) and that vindication of her Title VII rights should not be prejudiced by her choice to submit her claims to arbitration rather than to have them adjudicated in court (see, e.g., id. at 52).

Reviewing the district court's conclusions of law de novo, see, e.g., T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010) ("T.Co"), we conclude for the reasons that follow, that Schwartz's contentions are without merit.

A. Grounds for Vacating an Arbitration Award

The FAA provides that the district court, upon application by a party to the arbitration, may vacate an arbitration award

> (1) where the award was procured by corruption, fraud, or undue means;

> (2) where there was evident partiality or corruption in the arbitrators, or either of them;

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

In addition, as "judicial gloss on the[se] specific grounds for vacatur of arbitration awards," T.Co, 592 F.3d at 340 (internal quotation marks omitted), we have held that the court may set aside an arbitration award if it was rendered in "manifest disregard of the law," id.; see, e.g., Hoeft v. MVL Group, Inc., 343 F.3d 57, 64 (2d Cir. 2003) (citing Wilko v. Swan, 346 U.S. 427, 436-37 (1953), overruled on other grounds, Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 485 (1989); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir. 1986) ("Bobker")). Although "the Supreme Court placed the proper scope of the manifest disregard doctrine into some doubt with its decision in Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, [585 (2008)]," T.Co, 592 F.3d at 339, the Supreme Court in Stolt-Nielsen S.A. v. AnimalFeeds International Corp., 130 S. Ct. 1758 (2010) ("Stolt-Nielsen"), declined to decide whether the manifest disregard standard "survives [its] decision in Hall Street Associates . . . as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10," 130 S. Ct. at 1768 n.3. The Stolt-Nielsen Court instead assumed "arguendo" that the manifest disregard standard "requir[es] a showing that the arbitrators knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it," id. (internal quotation marks omitted), and found that that standard was "satisfied" in the case before it, id.

This Court, in the wake of Hall Street Associates, "concluded that manifest disregard remains a valid ground for vacating arbitration awards," T.Co, 592 F.3d at 340 (internal quotation marks omitted); and we have continued to recognize that standard as a valid ground in the wake of the Supreme Court's decision in Stolt-Nielsen, see Jock v. Sterling Jewelers Inc., 646 F.3d 113, 121-22 (2d Cir. 2011). Our standard for what constitutes a manifest disregard largely tracks the

standard assumed arguendo by the Supreme Court in Stolt-Nielsen. See, e.g., Jock v. Sterling Jewelers Inc., 646 F.3d at 121 n.1 (to apply the manifest disregard standard, the court must "consider, first, 'whether the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable,' and, second, whether the arbitrator knew about 'the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it'" (quoting Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 209 (2d Cir. 2002) ("Westerbeke"))); T.Co, 592 F.3d at 339; Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004); Hoeft v. MVL Group, Inc., 343 F.3d at 69; Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 24 (2d Cir. 1997) ("Yusuf Ahmed"), cert. denied, 522 U.S. 1111 (1998); Bobker, 808 F.2d at 933-34.

Under FAA § 10, an arbitrator's award may also be vacated "where the arbitrator's award is in manifest disregard of the terms of the [parties' relevant] agreement." Yusuf Ahmed, 126 F.3d at 23. "We apply a notion of 'manifest disregard' to the terms of the agreement analogous to that employed in the context of manifest disregard of the law." Id. at 25. Thus, "[i]nterpretation of the[] contract terms is within the province of the arbitrator and will not be overruled simply because we disagree with that interpretation." Id. "If the arbitrator has provided even a barely colorable justification for his or her interpretation of the contract, the award must stand." Westerbeke, 304 F.3d at 222.

In W.R. Grace & Co. v. Local Union 759, International Union of the United Rubber, Cork, Linoleum and Plastic Workers of America, 461 U.S. 757 (1983), the Court noted that this deferential standard is not applied "[i]f the contract as interpreted by [the arbitrator] violates some explicit public policy"; in that circumstance the courts "are obliged to refrain from enforcing it." Id. at 766. This statement, however, "does not . . . sanction a broad judicial power to set aside arbitration

awards as against public policy." United Paperworkers International Union v. Misco, Inc., 484 U.S. 29, 43 (1987). To permit the court to refuse enforcement of an arbitrator's award on public policy grounds, the public policy must be "'well defined and dominant,'" and must be "'ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" Id. (quoting W.R. Grace, 461 U.S. at 766 (other internal quotation marks omitted)).

B. Schwartz's Reliance on the Fair Pay Act of 2009

The record in the present case provides no basis for vacating the Panel Award denying Schwartz's claims. None of the grounds articulated in FAA § 10(a) is applicable. A final decision was reached by the Panel; Schwartz has presented no evidence of fraud, corruption, or use of undue means to reach that decision; and she has pointed to no evident partiality, corruption, misconduct, or misbehavior on the part of the arbitrators. Although Schwartz contends that the Panel should have considered all of her pre-April 2001 evidence as to discriminatory practices by Merrill Lynch, the temporal limitation imposed by the arbitrators was based on their interpretation of the Release, in which Schwartz expressly relinquished any claims "related to" her employment with Merrill Lynch prior to the April 2, 2001 date on which she signed the Release. Further, the Panel did not rigidly exclude all evidence of conduct by Merrill Lynch prior to April 2, 2001; rather it allowed the introduction of evidence as to events that occurred as much as six months before that date. That flexibility is indeed silently recognized by Schwartz's argument that the Panel should have allowed her to introduce evidence of "acts occurring before October 2000" (Schwartz brief on appeal at 12 (emphasis added)). We think it plain that the Panel's determination that acts performed more than six months prior to the period for which Schwartz could seek recovery were "too remote" (Tr. 58) cannot

be termed "misconduct . . . in refusing to hear evidence pertinent and material to the controversy," 9 U.S.C. § 10(a)(3).

Nor does the record suggest, on the part of the arbitrators, any manifest disregard of the law. Plainly, the Panel could not have disregarded the Fair Pay Act; that statute had not been enacted when the Panel rendered its decision. Moreover, notwithstanding Schwartz's assertion that "the Arbitrators accepted Merrill Lynch's Ledbetter argument" as the ground for excluding her evidence as to events more than six months prior to her signing of the release (Schwartz brief on appeal at 23; see also id. at 12), that assertion is belied by the record. Arbitrator Wittenberg first ordered the temporal limitation on Schwartz's evidence in April 2005, more than two years before the Supreme Court decided Ledbetter. When the Panel, at the start of the hearing in May 2008, reaffirmed the Wittenberg Order, it made no mention of the Ledbetter decision at all. And when the Panel rendered its decision in November 2008, it likewise made no mention whatever of Ledbetter. Rather, the Panel's temporal limitation on admissible evidence was explicitly based on the Release itself. (See Wittenberg Order at 1-2; Tr. 58; Award at 2).

Thus, we need not decide in this case whether a retroactive change in governing law is a ground for vacatur of an arbitration award under an agreement that guarantees the protection of applicable law, because the Panel did not limit the presentation of evidence on the basis of Ledbetter. The Panel simply ruled that Schwartz had released claims of discrimination based on events that occurred prior to the date on which she signed the Release.

Although Schwartz contends that the provision that she "did not release 'any claim that arises from events occurring after the date of this Settlement Agreement and Mutual Release'" was designed "to make clear that Schwartz and other class members retained the right to recover for any

discrimination that occurred after April 2001, even if that discrimination was similar or related to the discrimination of the past" (Schwartz brief on appeal at 17 (emphasis added)), the Release did not clearly so state. As quoted in Part I.A. above, the Release also provided that Schwartz

> irrevocably and unconditionally waives, releases and forever discharges Merrill Lynch . . . with respect to any and all claims . . . of any kind whatsoever, . . . to the day of the date she executes this Settlement Agreement and Mutual Release including, without limitation, any and all claims arising out of or relating to claimant's employment, compensation and benefits with Merrill Lynch.

(Emphases added.) Given this language, we cannot conclude that the Panel's limitation of Schwartz's proof to events that occurred no more than six months prior to April 2001 constituted a manifest disregard of the terms or meaning of the Release.

In light of the Panel's grounding of its evidentiary limitation on the terms of the Release, Schwartz's argument that "Congress [in the Fair Pay Act] reversed the Ledbetter decision and restored the law as it was the day before Ledbetter was decided" (Schwartz brief on appeal at 13) is irrelevant. Before Ledbetter was decided, it was the law that releases of claims, granted for consideration, were enforceable and that releases of Title VII claims are not contrary to public policy, see, e.g., Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 (1973) ("presumably an employee may waive his cause of action under Title VII as part of a voluntary settlement"). Schwartz has not pointed to--and we are not aware of--any provision in the Fair Pay Act or any facet of the legislative history that even remotely suggests that Congress intended to alter those legal principles or to revive claims that had previously been released.

Finally, we reject Schwartz's contention that the November 2008 Award should be vacated on the ground that if the Award had been a "federal court" decision, "she would be entitled

to" have it vacated "based on the congressional[] overrul[ing]" of <u>Ledbetter</u> in January 2009 (Schwartz brief on appeal at 46). The Award was not, however, a federal court decision; and even if it had been, it could not so easily be undone, for a statute that would "requir[e] an Article III court to set aside a final judgment" "entered before its enactment" would violate the constitutional principle of separation of powers, <u>Plaut v. Spendthrift Farm, Inc.</u>, 514 U.S. 211, 240 (1995).

CONCLUSION

We have considered all of Schwartz's arguments on this appeal and have found them to be without merit. The judgment of the district court, denying the petition to vacate the arbitrators' Award, is affirmed.