*Davis v. Bombardier Transp. Holdings*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————

August Term, 2014

(Submitted: March 6, 2015      Decided: July 22, 2015)

Docket No. 14-289

————

NATASHA DAVIS,

*Plaintiff-Appellant,*

-v.-

BOMBARDIER TRANSPORTATION HOLDINGS (USA) INC.,

*Defendant-Appellee.*

————

Before: WESLEY, LIVINGSTON, and CARNEY, *Circuit Judges*.

Plaintiff-Appellant Natasha Davis brought claims of disability-based employment discrimination and retaliation against her former employer, Defendant-Appellee Bombardier Transportation Holdings (USA) Inc.  The United States District Court for the Eastern District of New York (Mauskopf, J.) granted Bombardier's motion for summary judgment, finding, in relevant part,

that Davis's demotion-based claim was time barred. On appeal, Davis argues that the Lilly Ledbetter Fair Pay Act of 2009 applies to and revives this otherwise time-barred claim. We AFFIRM.

> Nadira S. Stewart, Charmaine M. Stewart, Stewart Law Firm, PLLC, Rosedale, NY, *for Plaintiff-Appellant*.
>
> Celena R. Mayo, Ricki E. Roer, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, New York, NY, *for Defendant-Appellee*.

WESLEY, *Circuit Judge*:

Plaintiff-Appellant Natasha Davis brought claims of disability-based employment discrimination and retaliation against her former employer, Defendant-Appellee Bombardier Transportation Holdings (USA) Inc. ("Bombardier"). The United States District Court for the Eastern District of New York (Mauskopf, J.) granted Bombardier's motion for summary judgment, finding, in relevant part, that Davis's demotion-based claim was time barred. On appeal, Davis argues that the Lilly Ledbetter Fair Pay Act of 2009 applies to and revives this otherwise time-barred claim.

For the reasons below, the judgment of the district court is AFFIRMED.

## BACKGROUND[1]

Bombardier built and operates the Air Train, a computer-driven train that transports passengers between major transportation hubs in New York City and the terminals of John F. Kennedy International Airport. In 2002, knowing that Natasha Davis was a Type I diabetic, Bombardier hired her as a Customer Service Agent. Davis never actually worked as a Customer Service Agent because Bombardier altered the Customer Service Agent position prior to Davis's commencement date. Bombardier renamed the position Air Train Agent ("ATA") and separated it into two categories: ATA I and ATA II. Employees in both positions had similar responsibilities, but the ATA II job title carried the additional responsibility of manually operating the Air Train during emergencies. In 2004, Davis became an ATA II.

On January 25, 2007, Davis went on disability leave for diabetic retinopathy. Davis underwent at least six eye surgeries during her leave. In August 2007, Davis notified Bombardier that she was prepared to return to work, and she submitted to a return-to-work physical. The parties dispute whether Bombardier routinely administered this physical to employees who had been on

---

[1] Except as otherwise noted, the facts are not in dispute and are drawn from the district court's memorandum, supplemented as necessary by the record.

leave for more than 90 days. Bombardier informed Davis that she failed the physical and eye exams, but Davis contends she passed. Bombardier thereafter determined that Davis could no longer operate the Air Train in an emergency.[2] On September 1, 2007, Bombardier "demoted" Davis to the ATA I position, which paid 75 cents less per hour than the ATA II position.[3]

Davis then applied for two positions with Bombardier but was not hired for either. In both instances, Davis had poorer computer skills than the successful candidates and she received lower scores in most of the categories considered by Bombardier to be relevant for the positions. On September 5, 2008, Davis filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). Davis filed her federal suit on February 16, 2011. Following discovery, Bombardier moved for summary judgment. The district court granted Bombardier's motion for summary judgment on all of Davis's federal claims, and declined to exercise supplemental jurisdiction over Davis's other claims. Relevant to this appeal, the district court dismissed Davis's

---

[2] Bombardier asserts that its demotion decision was based on the results of Davis's eye exam while Davis contests Bombardier's motivation.

[3] Bombardier characterizes Davis's reclassification from ATA II to ATA I as a "transfer" throughout its appellate brief; however, Davis and the district court described this event as a "demotion," *see, e.g.*, J.A. at 83 n.3, and Bombardier does not take issue with this characterization. Without passing judgment on the merits of her underlying claim, we adopt Davis's use of the term "demotion" to describe what occurred here.

4

demotion claim as untimely because the demotion occurred more than 300 days prior to when she filed her EEOC charge of discrimination. *See* 42 U.S.C. § 2000e-5(e); *id.* § 12117.

## DISCUSSION[4]

On appeal, Davis principally argues that the Lilly Ledbetter Fair Pay Act of 2009 ("Ledbetter Act"), 42 U.S.C. § 2000e-5(e)(3)(A), applies to her otherwise time-barred demotion claim.[5] The Ledbetter Act makes it unlawful to apply a discriminatory compensation decision to an employee and starts a new statute of limitations clock with each paycheck that reflects that decision. Davis argues that Bombardier's demotion decision was made with disability-based

---

[4] "We review a district court's grant of summary judgment de novo, construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011) (internal quotation marks and citation omitted).

[5] Davis also argues that the district court erred by failing to consider how demographic information might have created a genuine issue of material fact related to her failure to promote claims, which, unlike her demotion claim, are timely regardless of whether the Ledbetter Act applies. During discovery, Bombardier disclosed the application materials of only the hired candidates, not application materials for every candidate. Davis did not move to compel disclosure of any additional application materials. Bombardier contends that Davis never argued below that demographic information could potentially create a genuine issue of material fact. But whether or not Davis forfeited this argument is unimportant because it lacks merit. "[M]ere speculation and conjecture is insufficient to preclude the granting of [summary judgment]." *Harlen Assocs. v. Incorporated Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

discriminatory intent and, as a result, reduced her compensation. Thus, she submits that her claim is timely when measured from her last paycheck and not the date of her demotion. Bombardier responds that the Ledbetter Act does not resurrect otherwise time-barred demotion claims because the statute is applicable only to discriminatory compensation practices.

Under the Americans with Disabilities Act ("ADA"), it is unlawful for an employer to discriminate against a "qualified individual" on the basis of her disability "in regard to . . . employee compensation." 42 U.S.C. § 12112(a). The ADA incorporates the Ledbetter Act, *id.* § 12117(a), which provides that:

> [A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

*Id.* § 2000e-5(e)(3)(A). In short, this provision specifies that an unlawful employment action occurs when the discriminatory compensation decision or practice is adopted and when the individual is "subject to" and "affected by" the decision. *Id.* Davis is right that a compensation claim under the statute accrues

6

not only at the time of the discriminatory decision but also with each paycheck the victim receives. *See Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 449 (2d Cir. 2011). But that alone does not resolve her appeal.

We conclude that the Ledbetter Act does not encompass a claim of a discriminatory demotion decision that results in lower wages where, as here, the plaintiff has not offered any proof that the compensation itself was set in a discriminatory manner. A plaintiff must plead and prove the elements of a pay-discrimination claim to benefit from the Ledbetter Act's accrual provisions.

In early 2009, Congress passed the Ledbetter Act to overrule the Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007). Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (2009). In *Ledbetter*, the Supreme Court found that the plaintiff's pay-discrimination claim, which was based on disparate pay rates between the plaintiff and her male colleagues for the same work, was untimely. 550 U.S. at 621-22. "The [*Ledbetter*] Court rejected the contention that each pay check issued to the plaintiff constituted a cognizable act of discrimination, concluding that 'when the disparate pay is received during the statutory limitations period, but is the result of intentionally discriminatory pay decisions that occurred outside the

limitations period,' the claim for discrimination in salary in violation of Title VII is time-barred[.]" *Schwartz*, 665 F.3d at 448 (quoting *Ledbetter*, 550 U.S. at 623).

Justice Ginsburg, joined by three of her colleagues, dissented. She argued that, among other things, the "realities of the workplace" reveal why claims of discriminatory compensation should accrue when discriminatory wages are paid. *Ledbetter*, 550 U.S. at 649-51 (Ginsburg, J., dissenting). Specifically, she stated that "[w]hen an employer makes a decision of [an] open and definitive character, [such as promotions, transfers, hirings, and firings,] an employee can immediately seek out an explanation and evaluate it for pretext." *Id.* at 649. In contrast, pay levels—and, thus, pay disparities—are frequently concealed by both employers and employees. *Id.* at 649-50. Congress agreed. In passing the Ledbetter Act, Congress overruled the Court's narrow interpretation of when compensation-based claims accrue. *See Schwartz*, 665 F.3d at 449. The Ledbetter Act's congressional findings section states: "The limitation imposed by the Court on the filing of discriminatory compensation claims ignores the reality of wage discrimination and is at odds with the robust application of the civil rights laws that Congress intended." Ledbetter Act, Pub. L. No. 111-2, § 2.

Turning to Davis's claim, we begin with the plain language of the statute. *See United States v. Robinson*, 702 F.3d 22, 31 (2d Cir. 2012). The Ledbetter Act encompasses "discrimination in compensation," described as "discriminatory compensation decision[s] or other practice[s]." 42 U.S.C. § 2000e-5(e)(3)(A). These repeated references to compensation lead us to concur with the Third Circuit's assessment that "the plain language of the [Ledbetter Act] covers compensation decisions and not other discrete employment decisions," such as hirings, firings, promotions, and demotions. *Noel v. Boeing Co.*, 622 F.3d 266, 274 (3d Cir. 2010).

But the demotion decision here did also affect Davis's level of compensation. One might think that if the discriminatory act results in a loss of pay the demotion is in fact a part of a compensation decision. As this case makes clear, such an assumption is not always correct because a change in pay, standing by itself, is not sufficient to bring a claim within the ambit of the Ledbetter Act. In *Ledbetter*, the plaintiff sought to prove pay discrimination by showing that she was paid substantially less than her male colleagues. 550 U.S. at 622; *see also id.* at 643 (Ginsburg, J., dissenting). In her dissent, Justice Ginsburg explains that notice to the affected employee is a significant reason why discrete

9

employment actions differ from pay discrimination. *See also id.* at 649-50. Pay discrimination is often not obvious to its victim because many employers are not transparent about compensation levels; indeed, to state such a claim, an employee needs to compare his compensation to that of his co-workers. *See id.*

On the other hand, employees are put on notice of demotions, promotions, hirings, and firings by the nature of how those decisions are communicated. *See id.* at 649. Employers will also communicate to the demoted employee any pay reduction that is concomitant with the demotion. The demoted employee, on notice of his pay reduction, "can immediately seek out an explanation and evaluate it for pretext." *Id.* If the employee has been wrongfully demoted, he is entitled to an award of back pay for lost compensation caused by the demotion. *See* 42 U.S.C. § 12117(a) (referring to 42 U.S.C. § 2000e-5). Such an award will make a demoted employee whole—without the need for the Ledbetter Act's generous accrual provisions because the employee had notice of the pay reduction. Since the *Ledbetter* decision specifically dealt with a pay-discrimination claim that was cognizable without regard to other adverse employment actions, we find that the Ledbetter Act's reference to "discrimination in compensation" was to traditional pay-discrimination claims

10

rather than to a pay reduction that flows from another adverse employment action.[6]

The state of the law at the time the Ledbetter Act was passed further supports the distinct nature of pay-discrimination claims and pay reductions that occur with a demotion. *See Lorillard v. Pons*, 434 U.S. 575, 581 (1978) ("[W]here . . . Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute."). For example, in *Taylor v. United Parcel Service, Inc.*, 554 F.3d 510, 522 (5th Cir. 2008), the Fifth Circuit noted that in order to state a claim for "discrimination in compensation" under Title VII, "a plaintiff must show that he was a member of a protected class and that he was paid less than a non-member for work requiring substantially the same responsibility." Likewise, interpreting the Age Discrimination in Employment Act ("ADEA"), the Eleventh Circuit developed a prima facie case for "age discrimination in compensation" that required the plaintiff to show that, among other things, "similarly situated persons outside the protected age group

---

[6] We note that our conclusion is consistent with the decisions of our sister circuits that have interpreted the Ledbetter Act. *Almond v. Unified Sch. Dist. #501*, 665 F.3d 1174, 1175, 1180–81 (10th Cir. 2011); *Noel*, 622 F.3d at 274; *Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 374–75 (D.C. Cir. 2010).

11

received higher wages." *MacPherson v. Univ. of Montevallo*, 922 F.2d 766, 774 (11th Cir. 1991). We find these cases persuasive evidence of Congress's intent because the Ledbetter Act modified the ADA, Title VII, and the ADEA.

Here, after analyzing the *Ledbetter* decision, Congress's response to that case, and courts' interpretation of civil rights statutes that existed at the time Congress passed the Ledbetter Act, we conclude that Davis's claim falls outside the scope of the statute. Davis's attempt to salvage her time-barred demotion claim by virtue of a concomitant pay reduction is unpersuasive because her claim is based on the theory that she was demoted and paid less when she was still able to perform higher-paying work. Her claim is not that she was paid less than employees engaged in the same work because she was disabled. Davis does not dispute that her new hourly pay was the same as all other ATA I employees. The record evidence does not permit the conclusion that the Ledbetter Act's accrual provisions apply to Davis's demotion claim—her claim is untimely.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

12