*Wells Fargo Advisors, LLC v. Mercer*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the twenty-third day of August, two thousand eighteen.

PRESENT:　JOSÉ A. CABRANES,
　　　　　ROSEMARY S. POOLER,
　　　　　　　　*Circuit Judges,*
　　　　　J. PAUL OETKEN,
　　　　　　　　*District Judge.*[*]

_____

WELLS FARGO ADVISORS, LLC,

　　　　　*Petitioner-Appellee,*　　　　　　　16-1458

　　　　　v.

KEVIN MERCER,

　　　　　*Respondent-Appellant.*

_____

_____

[*] Judge J. Paul Oetken, of the United States District Court for the Southern District of New York, sitting by designation.

1

**FOR RESPONDENT-APPELLANT:**        Kevin Mercer, *pro se*, Bronxville, NY.

**FOR PETITIONER-APPELLEE:**        Sandra D. Grannum, Drinker Biddle & Reath LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Edgardo Ramos, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the January 8, 2016 judgment of the District Court be and hereby is **AFFIRMED**.

Respondent-Appellant Kevin Mercer ("Mercer"), proceeding *pro se*, appeals from a judgment of the District Court confirming an arbitration award in favor of his former employer, Petitioner-Appellee Wells Fargo Advisors, LLC ("Wells Fargo"). Mercer obtained three loans from Wells Fargo that, pursuant to their governing promissory notes, became due on termination of his employment. After Mercer resigned, Wells Fargo requested that he repay the outstanding balance on the loans and, when he did not do so, initiated arbitration proceedings with the Financial Industry Regulatory Authority ("FINRA"). In January 2014, a single arbitrator conducted proceedings and awarded Wells Fargo $103,389.82 in damages and $17,363.01 in interest. On November 21, 2014, Wells Fargo filed a petition requesting that the District Court confirm the arbitration award. The District Court granted summary judgment in favor of Wells Fargo, concluding that the award was valid, Mercer's request to vacate the award was untimely, none of Mercer's arguments satisfied the Federal Arbitration Act's enumerated grounds for vacatur, and Mercer had failed to establish that the award was issued in manifest disregard of the law. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\*     \*     \*

"In reviewing a district court's confirmation of an arbitral award, we review legal issues *de novo* and findings of fact for clear error." *Pike v. Freeman*, 266 F.3d 78, 86 (2d Cir. 2001). A district court's review of an arbitration award is highly deferential, and an award should be confirmed if there is a "barely colorable justification" for it. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Landy Michaels Realty Corp. v. Loc. 32B-32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)). Because Wells Fargo provided undisputed evidence to the arbitrator that Mercer (1) signed three promissory notes providing that the amount owed would become due on termination of his employment and (2) owed Wells Fargo $103,389.82 when he resigned, the District Court correctly concluded there was a colorable justification for the award.

Moreover, as the District Court rightly held, Mercer's request to vacate the award is time-barred. "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse

2

party or his attorney within three months after the award is filed or delivered," 9 U.S.C. § 12, and "a party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period has run, even when raised as a defense to a motion to confirm," *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984). Though the award was issued on January 24, 2014, Mercer made no effort to challenge it until he responded to Wells Fargo's motion to confirm on March 9, 2015—long after the three-month period expired. Even if Mercer's request was timely, however, we find no error with the District Court's alternative consideration of the merits of Mercer's defenses, which he reiterates on appeal.

\*     \*     \*

Mercer argues, for the first time in his reply brief, that it would be inequitable to permit Wells Fargo to collect the debt after it issued a Form 1099-C[1] purportedly indicating that most of the debt was discharged. Wells Fargo represents that the Form 1099-C was issued inadvertently and has been corrected to show that none of Mercer's debt has been discharged. Mercer does not dispute that he received the corrected Form 1099-C or Wells Fargo's description of its contents.

Though this argument does not fall squarely within the available grounds for vacating an arbitration award, *see, e.g.*, *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011) (listing grounds), we consider it briefly and conclude that it is unavailing.[2] The majority of courts to address this issue have concluded that a Form 1099-C is not evidence that a debt was discharged, reasoning that, under the applicable regulations, "a creditor may be obligated to file a Form 1099-C even though an actual discharge of indebtedness has not yet occurred or is not contemplated." *FDIC v. Cashion*, 720 F.3d 169, 178 (4th Cir. 2013); *see also* 26 C.F.R. § 1.6050P-1(a) (requiring filing of Form 1099-C on occurrence of certain events "*whether or not* an actual discharge of indebtedness has occurred on or before the date on which the identifiable event has occurred" (emphasis added));

---

[1] When certain entities, such as Well Fargo, "discharge[ ] (in whole or part) the indebtedness of any person," they must file with the Internal Revenue Service a Form 1099-C that includes information such as the individual's name, address, and taxpayer identification number, and the amount of indebtedness discharged. 26 U.S.C. § 6050P(a); 26 C.F.R. § 1.6050P-1(a).

[2] Mercer arguably waived this argument by raising it for the first time in his reply brief despite receiving the original Form 1099-C approximately three months before he filed the final version of his opening brief. *See Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996) (declining to consider argument raised for the first time in *pro se* litigant's reply brief). Though "[w]e generally do not consider issues raised in a reply brief for the first time," we exercise our discretion to do so here because Wells Fargo briefed the issue in its opposition to Mercer's motion to admit the original Form 1099-C into the appellate record. *See In re Harris*, 464 F.3d 263, 268 n.3 (2d Cir. 2006) (considering argument raised for the first time on reply where the issue was "briefed fully by both parties").

I.R.S. Info. Ltr. 2005-0207, at 3 (Dec. 30, 2005) (stating that the IRS "does not view a Form 1099-C as an admission by the creditor that it has discharged the debt and can no longer pursue collection").

We need not decide whether to adopt this view. Even assuming that a Form 1099-C is evidence that a debt has been discharged, the cases on which Mercer relies to argue that permitting collection here would be inequitable are inapposite. In each case, it was undisputed or evident from the record that (1) the debtors had declared the discharged amount listed on the Form 1099-C as part of their gross income and (2) the creditors had not issued a corrected Form 1099-C. *See In re Reed*, 492 B.R. 261, 263, 272 (Bankr. E.D. Tenn. 2013); *In re Crosby*, 261 B.R. 470, 472 (Bankr. D. Kan. 2001); *In re Welsh*, No. 06-10831ELF, 2006 WL 3859233, at *1-2 (Bankr. E.D. Pa. Oct. 27, 2006). Here, in contrast, Mercer does not allege that he reported the discharged debt as part of his gross income, and Wells Fargo issued a corrected Form 1099-C. Accordingly, the tax consequences that made collection inequitable in the cases Mercer cites are not present in his case. *See In re Crosby*, 261 B.R. at 474 ("The actual (or at least potential) tax consequences of the form make it inequitable to allow the [creditor] to enforce its claims against the debtors. Until the [creditor] corrects or withdraws the 1099-C it mistakenly filed . . . , it cannot enforce its claim.").

We have considered any remaining arguments and find them to be without merit.[3] Accordingly, we **AFFIRM** the judgment of the District Court. Mercer's pending motion to admit new evidence into the record, Dkt. No. 112, is hereby **DENIED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[3] We do not consider Mercer's arguments that his resignation was a constructive discharge, and that the arbitration provision in the promissory notes was unconscionable because he raises these claims for the first time on appeal. *See Harrison v. Republic of Sudan*, 838 F.3d 86, 96 (2d Cir. 2016).