19-4022
Seneca Nation of Indians v. State of New York

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2020

(Argued: October 2, 2020           Decided: February 22, 2021)

Docket No. 19-4022

_____

SENECA NATION OF INDIANS,

*Plaintiff-Appellant*,

v.                                               19-4022-cv

STATE OF NEW YORK,

*Defendant-Appellee.*

_____

Before: POOLER, LOHIER, and NARDINI, *Circuit Judges*.

Appeal from the judgment of the United States District Court for the Western District of New York (Skretny, *J.*) confirming an arbitration award in favor of the defendant State of New York. The Seneca Nation of Indians (the "Nation") argues that the arbitration panel majority manifestly disregarded the

Indian Gaming Regulatory Act and the district court erred in confirming the award. Alternatively, the Nation argues that the district court erred in declining to refer the issues raised to the Department of the Interior pursuant to the primary jurisdiction doctrine. We agree with the district court that the dispute was a question of contractual interpretation reserved to the arbitral panel and referral was not necessary. Therefore, we AFFIRM the judgment of the district court.

_____

RIYAZ A. KANJI, Kanji & Katzen PLLC, Ann Arbor, MI, *for Plaintiff-Appellant Seneca Nation of Indians*.

Carol E. Heckman, Carson R. Cooper, Lippes Mathias Wexler Friedman LLP (*on the brief*), Buffalo, NY, *for Plaintiff-Appellant Seneca Nation of Indians*.

GREGORY M. STARNER, White & Case LLP (Matthew L. Nicholson, Lauri Kai, *on the brief*), New York, NY, *for Defendant-Appellee State of New York*.

POOLER, *Circuit Judge*:

Plaintiff-Appellant Seneca Nation of Indians (the "Nation") appeals from a judgment of the United States District Court for the Western District of New York (William M. Skretny, *J.*), entered on November 12, 2019, confirming an

arbitral award for the State of New York. In the district court, the Nation argued that the arbitration panel majority manifestly disregarded the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701–2721. The Nation argued that the panel usurped the authority of the Secretary of the Interior (the "Secretary") by requiring the Nation to continue making payments to New York during the renewal period of a gambling compact between the parties. Alternatively, the Nation argued that the district court should refer the issues raised to the Department of the Interior ("DOI") pursuant to the primary jurisdiction doctrine if it had any doubt as to whether the Secretary's approval was required for those continued payments.

The district court rejected these arguments, finding that the arbitral panel did not manifestly disregard the law in deciding on a disputed contractual term and imposing the payments. The district court also determined that referral to the DOI would undermine the parties' agreement to submit disputes under the gambling compact to binding arbitration, and in any case was unnecessary to assess the propriety of the arbitration panel's resolution of a contract dispute. Therefore, the district court confirmed the award.

For the purposes of this appeal, the Nation concedes that it cannot relitigate the question, decided by the arbitral panel, of whether the contract requires payments during the renewal period. While the Nation focuses our attention on IGRA and the purposes underlying it, our review is narrower. We are simply asked to determine whether the arbitral panel manifestly disregarded IGRA in its decision. As such, we consider only (1) whether IGRA clearly imposes a requirement that the contract interpretation be subjected to the Secretary's further approval, and (2) if so, whether the arbitration panel ignored or defied that governing law. It did not. The arbitral panel performed its assigned task of contract interpretation through standard methods. The district court also was not required to refer this question to the Department of the Interior, as contract interpretation is within the core competency of courts.

We express no view about whether the Secretary's position when the Compact was deemed approved was that it in fact required additional payments during the renewal term. We also express no view on whether a district court reviewing the Compact in the first instance could determine after reviewing post-agreement extrinsic evidence that the renewal term required continued payments, or whether IGRA would require secretarial approval of judicial

4

interpretations that rely on extrinsic evidence.  We hold only that the arbitral panel – which did in fact consider IGRA – reasonably concluded that its task here was a straightforward matter of contract interpretation not subject to the Secretary's approval. Therefore, we AFFIRM the judgment of the district court confirming the arbitral award.

**BACKGROUND**

On August 18, 2002, the Nation and New York entered into a compact setting forth the terms and conditions under which the Nation could conduct certain casino-style gaming (Class III gaming, as defined by 25 U.S.C. § 2701(d)) in New York (the "Compact"). On November 12, 2002, the Secretary completed review of the Compact and declined to approve or disapprove it. Pursuant to 25 U.S.C. § 2710(d)(8)(c), the Compact was "considered to have been approved, 'but only to the extent the compact is consistent with the provisions of [IGRA].'" App'x 163–64. The Compact became effective December 9, 2002. *See* Dep't of the Interior, Indian Gaming, 67 Fed. Reg. 72968-01 (Dec. 9, 2002).

The Compact provided for an initial term of 14 years and stated that absent objection by either party, "the term of this Compact shall be renewed automatically for an additional period of seven (7) years." App'x 115. The

essential bargain of the Compact was that the Nation received exclusive rights to maintain certain gaming machines in a large portion of Western New York (the "Exclusivity Zone") in exchange for graduated revenue-sharing payments to New York from those machines (the "State Contribution"). For years 1-4, the State Contribution was 18 percent of the "net drop" of these machines (money dropped into machines, after payout, but before expenses). For years 5-7, it was 22 percent. For years 8-14, it was 25 percent. The Compact does not expressly address the terms of any State Contribution in the 7-year renewal period. New York received no other consideration in the Compact. The Nation's obligation to pay the State Contribution began on December 31, 2002, when the Nation opened its first facility.

During the initial 14-year period, the parties seemed largely satisfied with the agreement. The Nation notes that New York initially promised exclusivity for the Nation in both slot machines and video lottery gaming devices. However, New York began authorizing video lottery gaming devices within the Exclusivity Zone in 2004 and has, accordingly, collected payments only on the Nation's slot machine revenue. Still, the parties agree that each received numerous benefits from the Compact. New York received more than $1.4 billion in payments

through 2016. The Nation's overall gaming revenue has been in the range of $6.5 billion during the term of the Compact. At the end of the 14-year term, neither party delivered written objections to renewal, resulting in automatic renewal of the Compact for an additional seven years on December 9, 2016. Therefore, the Compact remains in effect through December 9, 2023.

Shortly before the initial term ended, the Nation contacted DOI regarding its understanding of the revenue-sharing provisions of the Compact during the renewal period. DOI responded with a technical assistance letter. The letter stated that DOI understood that the Compact contained 14 years of revenue sharing in exchange for 21 years of exclusivity and suggested that New York would need to make additional economic concessions benefiting the Nation to justify extending the revenue sharing provision to cover the renewal period.

On March 31, 2017, Seneca Nation President Todd Gates notified New York Governor Andrew Cuomo that the State Contribution for the last quarter of 2016 would be the final payment under the Compact. The Nation stated that the Compact required only 14 years of the State Contribution. New York responded that the payments should continue at the 25 percent rate for the seven-year renewal period, and when the parties were unable to reach agreement, New

York issued a demand for arbitration on September 7, 2017, in accordance with the Compact's dispute resolution procedures. On December 15, 2017, DOI withdrew the technical assistance letter as it "did not provide the certainty available to the parties in arbitration proceedings." App'x 212.

Section 14 of the Compact provides for binding arbitration to resolve disputes. The Compact states that in the event of a dispute, the parties should engage in good faith negotiations. If the negotiations fail, "either [p]arty may submit the dispute, claim, question, or disagreement to binding arbitration" to be conducted in accordance with the rules of the American Arbitration Association ("AAA"). App'x 143–44. The parties then appoint an arbitral panel of three, with each party selecting one arbitrator, and the two arbitrators picking the third. The Compact specifies that the arbitral award would be "final, binding and non-appealable." App'x 145. The Compact gave the United States District Court for the Western District of New York exclusive jurisdiction to enforce the arbitral award.

The parties submitted their dispute to a panel of three arbitrators. The Nation selected Kevin Washburn, Dean of The University of Iowa College of Law and former Assistant Secretary of Indian Affairs in DOI. New York selected

8

Henry Gutman, of Counsel at Simpson Thacher & Bartlett LLP. Those two arbitrators jointly selected William G. Bassler, a retired United States District Judge for the District of New Jersey, as the arbitral panel chair.

With the parties' agreement, the panel bifurcated its consideration of liability and remedy after conducting full arbitration hearings on December 12 and 13, 2018, resulting in a January 7, 2019 partial final award on liability with dissent; and an April 12, 2019 final award addressing remedies. The panel heard live testimony, including direct and cross examination, from Robert Williams, Deputy Secretary in the Office of Governor Cuomo. The panel also received two witness statements from Williams, a witness statement from Gates, and a statement from David Sheridan, Chief Financial Officer of the Seneca Gaming Corporation. It also received other documentary evidence.

The panel majority—comprised of Bassler and Gutman—found that the renewal provision was ambiguous as to the Nation's obligation to pay the State Contribution during the renewal period. Accordingly, the majority examined extrinsic evidence to resolve the ambiguity. The panel concluded that "read as a whole and in light of the extrinsic evidence" indicating "silence in the [renewal term's] negotiating history" and the "central premise" of an exchange of

exclusivity for revenue sharing, the Compact should be read to require the Nation to make revenue sharing payments in the renewal period. App'x 29, 59, 63, 67, 77. The panel examined the parties' pre-execution negotiations, post-execution communications, submissions from both parties to DOI, and determined "[t]he essential bargain of the Parties' agreement is a commercial agreement wherein exclusivity payments are made in consideration for exclusivity." App'x 67. The panel concluded that it would also be commercially unreasonable and against common sense to find that the word "renew" would extend the Nation's exclusivity without obligating the Nation to provide any continuing consideration to New York.

The Nation argued that the panel could not approve additional payments because the Secretary did not approve revenue sharing upon renewal of the Compact, as required by IGRA. 25 U.S.C. § 2710(d)(8). The panel majority acknowledged that it had no "legal authority to usurp the Secretary's" approval authority, but found that it could determine whether the terms of the Compact "already provide[d] for revenue-sharing payments upon renewal." App'x 65. The majority found that the Nation's argument depended on finding that the Secretary shared its interpretation, to wit, that the renewal term the Secretary

10

deemed approved did not include additional payments—but there was "no evidence in the record" to support that contention. *Id*.

Furthermore, the majority found that if the Nation's argument were correct, DOI never approved the renewal term, and "that arguably would mean that renewal of the Compact was not properly authorized and the Nation's gaming activities are unlawful." *Id.* The majority was also unpersuaded that adopting New York's position would be "approving" an additional seven years of payments; rather "it would simply be finding that the terms of renewal in the Compact deemed approved by the Secretary included revenue sharing payment obligations." App'x 66.

Washburn dissented. He viewed the terms of the Compact as unambiguously providing for only 14 years of State Contribution, with no State Contribution due in the 7-year renewal period. Washburn found the extrinsic evidence, the context of the negotiations, and the intent of the parties failed to support New York's position that the Compact provided for State Contribution payments during the renewal period.

With regards to IGRA, Washburn found the majority's holding inconsistent with federal law and policy. First, he cited *County of Oneida v. Oneida*

*Indian Nation of New York State*, 470 U.S. 226, 247 (1985), for the principle that if the Compact were indeed ambiguous, it should be interpreted liberally in the Nation's favor and to its benefit. Second, he viewed the majority's construction of the Compact as directly counter to the purpose of IGRA. Finally, Washburn wrote that if the Compact were ambiguous, the Secretary "cannot be said to have considered and reviewed or approved this key [renewal] provision," and enforcement of the majority opinion had "the effect of enforcing an agreement that goes beyond what was approved by DOI, thus potentially undermining DOI's important regulatory role." App'x 102.

The majority's final award on remedy found that "the Nation is obliged under ¶¶ 4(c)(1) and 12(b) of the Compact to continue to pay the State Contribution during the Compact renewal period at a rate of 25% of Net Drop of each category of Gaming Device for which exclusivity exists payable on a quarterly basis." App'x 22. Accordingly, the panel held "the Nation is to specifically perform its obligation . . . by paying the State Contribution currently owed to the State, including all past due payments, and by making all future payments in accordance with the Compact." *Id.* at 23. The panel accepted the parties' joint submission that the 25 percent net drop during the period January

12

1, 2017 to December 31, 2018 was $255,877,747.44, and held that the amount attributable to the fourth quarter of 2018 was due and payable by March 31, 2019. The majority held that each party would bear its own attorneys' fees and costs, and administrative fees and costs along with the arbitrators' expenses and compensation would be divided equally between the parties.

On April 16, 2019, the Nation submitted the final awards to DOI for the Secretary's review. The Nation's letter stated that the review was sought under the implementing regulations requiring the Secretary to review any substantive or technical amendments and would "serve to confirm [the award's] effectiveness and allow the Nation to perform its obligations under it and avoid any further legal controversy as to its obligations thereunder." App'x 213. On June 3, 2019, DOI returned the award as it lacked a "certification from the Governor or other State representative that he or she is authorized under State law to enter into the compact or amendment, as required by 25 C.F.R. § 293.8(c)." App'x 291. In a footnote, DOI made clear that it took no position on the question of whether the arbitration award amended the Compact.

On June 6, 2019, the Nation filed a petition to vacate the final award under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10. The State cross-petitioned to

13

confirm the award under the FAA, 9 U.S.C. § 9, on July 12, 2019. The Nation argued that the panel majority manifestly disregarded IGRA's requirement that the Secretary review and approve compact obligations or amendments—in this case, any payments beyond the 14-year initial term. Alternatively, the Nation argued that if the district court was uncertain as to whether the Secretary reviewed and approved the payments during the renewal term, it should stay the case and refer the question to DOI pursuant to the primary jurisdiction doctrine. New York argued that there was no basis to vacate the award or refer the question.

On November 8, 2019, the district court confirmed the award. *Seneca Nation of Indians v. New York*, 420 F. Supp.3d 89 (W.D.N.Y. 2019). The district court found that the Nation "made no showing that the IGRA Secretary-approval requirement clearly governs or that the panel simply ignored it." *Id*. at 103. The district court held that "the Nation's position [wa]s premised on a proposition that it has provided no authority for—that the arbitration award is an amendment to the Compact that requires the Secretary's approval under the IGRA." *Id*. at 104. Instead of a new payment obligation, the district court found

14

that the Secretary approved the renewal provision, and the panel simply interpreted that approved provision to require further payments. *Id*.

The district court held that the panel did not manifestly disregard a clearly governing legal principle, because it considered and appropriately rejected the argument that the Nation offered. *Id*. at 103-04. The Secretary approved the contract and the dispute resolution mechanism. *Id*. The district court declined to refer the issue to DOI. The court reasoned that the "arbitration question was not whether the Secretary explicitly approved State-Contribution payments during the renewal period, but rather, whether the terms of the Compact that the Secretary *did approve* provide for payment of the State Contribution during that term." *Id*. at 105–06. The district court held that this question was a matter of contract interpretation in which DOI had no special expertise, and therefore that referral to the agency was unnecessary. *Id*. at 105–06.

The Nation timely filed its notice of appeal.

## DISCUSSION

We review de novo the district court's application of the manifest disregard standard to an arbitration award. *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010).

15

The FAA provides a "streamlined" process for a party seeking a "judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks and citations omitted).

Section 10 of the FAA allows a court to vacate an arbitration award in four circumstances, primarily involving fraud, corruption, partiality, misconduct, or imperfect execution or exceeding of arbitral powers. *See* 9 U.S.C. § 10. We have held that "as judicial gloss on the[] specific grounds for vacatur of arbitration awards" in the FAA, an arbitrator's "manifest disregard" of the law or of the terms of the arbitration agreement "remains a valid ground for vacating arbitration awards." *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451–52 (2d Cir. 2011) (internal quotation marks omitted). However, "[a] litigant seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden, as awards are vacated on grounds of manifest disregard only in

16

those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *T.Co Metals*, 592 F.3d at 339 (internal quotation marks, citations, and alterations omitted). This Court will uphold an arbitration award under this standard so long as "the arbitrator has provided even a barely colorable justification for his or her interpretation of the contract." *Schwartz*, 665 F.3d at 452. "Vacatur is only warranted, by contrast, when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice." *Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019) (internal quotation marks omitted).

To succeed in challenging an award under the manifest disregard standard, a party must make "a showing that the arbitrators knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Schwartz*, 665 F.3d at 452 (internal quotation marks, citation, and alterations omitted). In addition to this "subjective component," a finding of manifest disregard requires an objective determination that the disregarded legal principle was "well defined, explicit, and clearly applicable." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 209 (2d Cir. 2002) (internal quotation marks

17

omitted).

The Nation argues that the panel manifestly disregarded IGRA's requirement of secretarial review. IGRA provides that the Secretary "is authorized to approve any Tribal-State compact entered into between an Indian tribe and a State governing gaming on Indian lands of such Indian tribe." 25 U.S.C. § 2710(d)(8)(A). Furthermore, a Tribal-State compact "shall take effect only when notice of approval by the Secretary of such compact has been published by the Secretary in the Federal Register." *Id.* § 2710(d)(3)(B). The Nation contends that, while the panel's contract interpretation is not subject to challenge, when the panel concluded that the contract was ambiguous, it necessarily held the Secretary did not approve payments for the renewal term.

**A. The Panel Did Not Manifestly Disregard IGRA**

The panel did not manifestly disregard governing law. Neither party disputes that the panel was aware of the secretarial review requirement of IGRA. Indeed, the panel explicitly addressed the requirement in its decision. "[I]t is beyond dispute that the Panel has no legal authority to usurp the Secretary's role and enforce a Compact term that the Secretary did not approve." App'x 65. Second, it explained that its award did not require independent secretarial

18

approval because it was merely interpreting a term in a compact that had already been deemed approved by the Secretary. In short, far from flouting or disregarding IGRA's established requirement that the Secretary approve Compact terms, the arbitral panel openly discussed and applied it.

The Nation tries to sidestep this conclusion by positing a different and novel legal proposition – that secretarial approval is required for an arbitrator's interpretation of a gaming compact's terms which is based on extrinsic evidence that was not before the Secretary at the time of the compact's approval – and arguing that the arbitral panel manifestly disregarded this distinct proposition. But the proposition advanced by the Nation does not, in fact, reflect the law, and an arbitrator cannot be faulted for "manifest disregard" unless it has "willfully flouted the governing law," *Schwartz*, 665 F.3d at 452 (internal quotation marks omitted and emphasis added).

It is not a clear controlling legal principle that the Secretary is required to approve an arbitrator's enforcement of its interpretation of an ambiguous contractual term. The Nation disavows the argument that it views the arbitration award as an amendment to the Compact. Instead, it argues that the Secretary's approval is required because there is no evidence as to how the Secretary would

19

interpret the disputed renewal provisions, so the Secretary cannot be said to have approved the payments.

This argument suffers from several infirmities. First, the text of the laws and regulations cited by the Nation contain no such requirement. IGRA simply requires secretarial approval for gaming compacts, and the regulations address amendments, not interpretations of existing contractual terms. *See* 25 U.S.C. § 2710(d)(3)(B), d(8)(A) (requiring secretarial approval for "compact[s]"); 25 C.F.R. § 293.4(a)–(b) ("Compacts are subject to review and approval by the Secretary. All amendments, regardless of whether they are substantive amendments or technical amendments, are subject to review and approval by the Secretary.") The Nation counters that IGRA makes clear that all terms of a Compact are subject to the Secretary's approval, so a term not approved by the Secretary has no legal force. However, since the Nation acknowledges that the award is not an amendment and acknowledges that it is bound by the panel's holding that the renewal term itself required payments, the provision of the Compact that it challenges can only be the renewal term and that term—for the purposes of this appeal—has already been deemed approved by the Secretary.

Second, there is no clearly controlling legal reason why the arbitrators'

reliance on extrinsic evidence must be viewed as transforming the panel's contract interpretation into a new term requiring separate IGRA approval. Consideration of extrinsic evidence has long been regarded as a staple of contract interpretation. *See Chicago, R.I. & P. Ry. Co. v. Denver & R.G.R. Co.*, 143 U.S. 596, 609 (1892) ("There can be no doubt whatever of the general proposition that in the interpretation of any particular clause of a contract, the court is not only at liberty, but required, to examine the entire contract, and may also consider the relations of the parties, their connection with the subject-matter of the contract, and the circumstances under which it was signed."). A panel's resort to *evidence* outside the four corners of a contract does not necessarily imply its creation of a *term* outside the contract's scope.

The Nation cites *Missouri River Servs., Inc. v. Omaha Tribe of Nebraska*, 267 F.3d 848, 855 (8th Cir. 2001), for the proposition that a reviewing court should invalidate an arbitration decision that adds an additional term to a compact in clear conflict with the contractual text. But as we have just explained, here the arbitration agreement left the question of contract interpretation to the panel, and the panel's resolution of that question did not add a new term to the Compact. There is no suggestion the arbitrator lacked the power to order payments;

indeed, this was the very question submitted to it. Upholding the decision here does not undermine IGRA's secretarial review requirement. Instead, it merely reinforces the principle that where a party chooses to leave contract interpretation to arbitrators, a party cannot invoke that requirement to evade the consequences of its choice.

Third, neither IGRA nor our case law contains a clear rule requiring secretarial approval of arbitral awards based on extrinsic evidence. Even were we to determine that, as a matter of first impression, IGRA's secretarial approval requirement applied in this context, the panel could not have willfully flouted that legal principle because it was not "well defined, explicit, and clearly applicable." *Westerbeke Corp*, 304 F.3d at 209 (internal quotation marks omitted). As such, the Nation cannot succeed on its manifest disregard challenge. *See, e.g. T.Co Metals*, 592 F.3d at 339 ("[T]he award should be enforced, despite a court's disagreement with it on the merits, if there is a *barely colorable justification* for the outcome reached." (internal quotation marks and citation omitted)); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 934 (2d Cir. 1986) ("We are not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of laws urged upon it.").

22

The Nation argues that to allow the panel majority to enforce its interpretation would open the door to widespread evasion of IGRA's secretarial review requirement. It suggests that affirming the decision would allow parties to evade review through secret side agreements and incorporate illegal terms such as certain types of taxes that are themselves unauthorized under IGRA, 25 U.S.C. § 2710(d)(4). Again, this argument rests on accepting the view that the renewal term did not require the payments, which conflicts with the panel's holding. If this case involved the panel introducing additional terms or terms in conflict with the contractual text, a court might have a stronger basis to determine that this ruling manifestly disregarded IGRA. Similarly, a court could certainly vacate an arbitration award that interpreted an agreement to require something expressly prohibited by law or statute, insofar as that would show that the arbitrators "willfully flouted the governing law by refusing to apply it." *Schwartz*, 665 F.3d at 452 (internal quotation marks omitted). But here, there is no side agreement or separate term that the panel incorporated in this case; the panel held that the existing term required the payments.

In attempting to find support for a principle forbidding consideration of post-agreement extrinsic evidence, the Nation cites to *In re Nortel Networks Inc.*,

737 F.3d 265, 272 (3d Cir. 2013), which briefly touched on the difficulties of resorting to extrinsic evidence in interpreting court-approved agreements. Since the court could not be said to have examined that evidence in granting approval to the agreement, the Third Circuit questioned whether this was permissible in interpreting court-approved agreements. Yet that discussion was dicta, because the Third Circuit resolved the question before it on the basis of the agreement's text, without resorting to extrinsic evidence. *Id*. Moreover, the dicta concerned the importance of clear affirmative language indicating the parties' agreement to arbitrate allocation disputes in bankruptcy proceedings. *Id* Furthermore, the language of the Third Circuit strongly implied that far from a clear application of existing law, the question of whether the use of extrinsic evidence was inappropriate in such circumstances was difficult and required further review. *Id.* (observing that "[t]hese difficult questions underscore the usefulness of reducing agreements . . . to plain language that can be recognized and enforced by courts examining only the text of the agreement"). Here, even if we were to agree with the Nation that there would have been some value in the panel seeking secretarial review after determining that the agreement was ambiguous, the panel's decision to continue its assessment and determine the proper

24

meaning of ambiguous text was not the panel dispensing its own brand of industrial justice in manifest disregard of governing law. *See Weiss*, 939 F.3d at 109.

**B. Referral to the DOI Was Not Warranted**

As an alternative to vacatur of the arbitral decision, the Nation argues that, if there was any question regarding the validity of its argument, the proper course of action would have been for the district court itself to refer the question to DOI under the doctrine of primary jurisdiction. The doctrine of primary jurisdiction allows a court to stay litigation and refer issues to an administrative agency when a case involves issues that fall within the special competence of that agency. *See United States v W. Pac. R.R. Co.*, 352 US 59, 62–65 (1956). The district court declined to do so here. We review a district court's decision not to apply the doctrine of primary jurisdiction de novo. *Ellis v. Tribune Television Co.*, 443 F.3d 71, 83 n.14 (2d Cir. 2006).

In this case, referral would have been inappropriate and would have clashed with the goals of the FAA. The FAA explicitly states:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one

25

year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court *must* grant such an order unless the award is vacated, modified, or corrected.

9 U.S.C. § 9 (emphasis added). The parties here agreed to put the arbitration award before a district court. Court review under the FAA is intended to be a "streamlined" process for a party seeking a "judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Mattel*, 552 U.S. at 582. "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair*, 462 F.3d at 110 (internal quotation marks and citation omitted). Invoking primary jurisdiction here would unnecessarily prolong the case and undermine the goal of the FAA to promote speedy and efficient resolution of disputes.

Additionally, the factors we have instructed courts to consider in assessing primary jurisdiction do not favor referral here. We consider four factors when determining whether to apply the doctrine:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy

26

considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*Ellis*, 443 F.3d at 82–83. Contract interpretation is a basic competency of courts,

and, as discussed above, the parties asked the arbitrators to decide if the renewal

provision of the Compact required additional payments. Moreover, while the

Nation stresses that it seeks a review of the question of approval of the payment

obligations under the renewal term, not an interpretation of the Compact, the

two issues cannot be separated in this manner. While in the first instance DOI

exercised broad discretion to approve or reject the Compact, IGRA does not

provide for subsequent agency review upon an arbitrator's determination that a

party is required to make further payments under an existing compact.  As for

the final two factors, the record reveals that DOI has already declined to

intercede in this case. DOI withdrew its technical assistance letter in favor of the

certainty of the arbitration proceedings. DOI again declined to become involved

upon the Nation's request after the end of the arbitration hearings. Accordingly,

there is no indication that DOI could reach a contrary ruling. The district court

was correct in finding that agency referral was not warranted.

27

**CONCLUSION**

In this case, we are not asked to make pronouncements regarding the wisdom of the panel decision or of the Secretary's view of the disputed term. The Nation attempts to draw the court into these disputes and the competing policy interests of the Nation and the State. However, the parties agreed to leave these difficult questions to the arbitrators.

We conclude that the arbitral panel did not manifestly disregard governing law, and the district court properly confirmed the award. Accordingly, the judgment of the district court is **AFFIRMED.**