*Telecom Business Solution, LLC v. Terra Towers Corp.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of February, two thousand twenty-four.

PRESENT:    John M. Walker, Jr.,
            Susan L. Carney,
            Steven J. Menashi,
                 *Circuit Judges.*

_____

TELECOM BUSINESS SOLUTION, LLC, LATAM
TOWERS, LLC, AMLQ HOLDINGS (CAY), LTD.,

     *Petitioners-Appellees,*

   v.                                                    No. 23-144

TERRA TOWERS CORP., TBS MANAGEMENT,
S.A.,

     *Respondents-Appellants,*

DT HOLDINGS, INC.,

     *Cross-Claimant-Appellant.*

_____

| | |
|---|---|
| *For Petitioners-Appellees Telecom Business Solution, LLC, LATAM Towers, LLC:* | MICHAEL N. UNGAR (Katherine M. Poldneff, *on the brief*), Ulmer & Berne LLP, Cleveland, Ohio. |
| *For Petitioner-Appellee AMLQ Holdings (Cay), Ltd.:* | GREGG L. WEINER, Ropes & Gray LLP, New York, New York (Andrew S. Todres, Ropes & Gray LLP, New York, New York, Daniel V. Ward, Ropes & Gray LLP, Boston, Massachusetts, *on the brief*). |
| *For Respondents-Appellants:* | JUAN J. RODRIGUEZ (Luke T. Jacobs, *on the brief*), Carey Rodriguez, LLP, Miami, Florida. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Kaplan, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED.**

Respondents-Appellants Terra Towers Corp. ("Terra") and TBS Management S.A. ("TBS") are the majority shareholders in Continental Towers LATAM Holdings Limited (the "Company"), which owns and operates telecom towers in Latin America. Petitioners-Appellees Telecom Business Solution, LLC ("Telecom"), LATAM Towers, LLC ("Towers"), and AMLQ Holdings (Cay), Ltd. ("AMLQ") are minority shareholders in the Company. The parties' relationship is governed by a shareholders' agreement ("SHA") that, *inter alia*, allows the minority shareholders to force a sale of the Company after a period of five years from the date of their initial investment. The SHA provides for binding arbitration of all disputes.

In February 2021, Telecom and Towers—later joined by AMLQ—initiated an arbitration proceeding, alleging that Terra had violated the SHA by blocking a proposed sale. The arbitration panel agreed and ordered specific performance of the SHA's forced-sale provision. In the course of the arbitration proceeding, the panel also issued certain interim orders relating to Terra's ongoing interference with the Company's management team. Terra and its affiliates appeal from the district court's decision of January 18, 2023, confirming the arbitration award. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

I

In 2015, Telecom, Towers, and AMLQ invested in the Company's predecessor, which had been wholly owned by Terra, TBS, and their affiliates. Telecom and Towers are affiliates of Peppertree Capital ("Peppertree"), a private equity firm. AMLQ is an affiliate of Goldman Sachs. After the Peppertree entities and AMLQ invested in 2015, they owned roughly 45 percent of the Company while Terra and TBS owned roughly 55 percent. According to the arbitration panel, "the business model of the Company is to build telecom towers at suitable locations and then rent 'space' on the towers to mobile communications operators." App'x 813. "The construction of towers … is a revenue stream for an affiliate of the majority shareholders, DT Holdings ('DTH') … [which] is paid by the Company for the construction." *Id.*

At the time of the minority shareholders' investment, the parties entered into the SHA, which gives the minority shareholders the right to force a sale of the Company after five years. The SHA provides that once the minority shareholders give notice of a proposed sale to an unaffiliated third-party purchaser, the majority shareholders have 30 days to procure an opinion from an investment bank recommending against the transaction; otherwise, they must consent to the proposed sale. If the majority shareholders procure an unfavorable opinion, or if the minority shareholders do not identify a buyer when they give notice of their

3

sale request, the Company must within 30 days retain an investment bank to facilitate a sale, and the majority and minority shareholders each agree to consent to the sale arranged by the investment bank.

The SHA also specifies governance arrangements for the Company. It allocates two board seats each to the majority and minority shareholders, with no procedure for breaking deadlocks. Section 4.04(a)(vi) gives the board authority over "the hiring or firing and compensation of members of the Management Team, including the Executive Team." *Id.* at 474.

Section 8.10 of the SHA provides that the agreement is governed by New York law. However, section 8.15 provides for mandatory arbitration in New York City, which will "be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect at the time of the arbitration." *Id.* at 502. Finally, section 8.12 provides that if the SHA is breached, the non-breaching party is entitled to specific performance.

The parties' relationship during the initial five-year lockup period was fraught,[1] and on November 4, 2020, the Peppertree entities gave notice pursuant to section 5.04(b) of their proposal to sell the Company to Torrecom Partners LP ("Torrecom"). Terra rejected the sale and procured an unfavorable opinion from an investment bank. The parties exchanged further communications over the next

---

[1] The arbitration panel attributed the tension between the parties to:

> the divergent views of the majority and minority shareholders about what towers should be built and where, and the minority shareholders defend their having opposed certain tower construction, that the majority shareholders advocated, on the basis that the towers would not be profitable to operate. The majority shareholders, for their part, contend that the minority's opposition to tower construction has had a different and allegedly improper motive: to depress the value of the Company so that an alleged affiliate of one of the minority shareholders could acquire the Company at an artificially low price.

App'x 813.

few weeks, but no board meeting was convened and no investment bank was retained. On January 19, 2021, the Peppertree entities sent another letter requesting the sale of the Company and demanding that the board retain an investment bank. The January 19 letter did not attach a purchase offer. In response, on January 27, 2021, Terra sent a letter asserting that the deadline for retaining an investment bank pursuant to Section 5.04(b)(i) of the SHA had passed and offering to buy out the minority investors' shares.

Finally, on February 2, 2021, the Peppertree entities (later joined by AMLQ) initiated arbitration proceedings, seeking damages and specific performance in the alternative. On August 12, 2021, the arbitration panel granted the minority shareholders' request for expedited consideration of their specific performance claim in the first phase of a bifurcated proceeding. On August 20, 2021, the panel denied the majority shareholders' request for discovery relating to affirmative defenses to the minority shareholders' claim for specific performance. The panel clarified that "in Phase 1 … the Tribunal intends only to make a determination of the legal sufficiency of pleaded affirmative defenses … and as to those affirmative defenses found to be legally sufficient we will in turn decide what evidence-gathering and hearing process is suitable." *Id.* at 1014-15. Phase 1 of the arbitration proceeding took place between September 27, 2021, and December 9, 2021. On February 24, 2022, the panel issued the unanimous First Partial Final Award ("FPFA"), which granted the minority shareholders' request for specific performance and ordered the sale of the Company.

On October 11, 2021, during the Phase 1 proceedings, independent counsel for the Company wrote to the panel to inform it that Jorge Hernandez, chairman of the Company's board and a principal of DTH and Terra, and his "agents" were harassing the Company's CEO, Jorge Gaitan, and his team—including Carol Echeverria, the Company's COO—and interfering with their conduct of the Company's affairs. In particular, the letter alleged that Hernandez and his agents had verbally attacked Gaitan and his team and "confiscated Mr. Gaitan's and his team's computers, searched their offices, disabled their email access, and

conducted a search of Mr. Gaitan's personal car." *Id.* at 1130. Based on these allegations, testimony, and other supporting evidence, the panel found that "DTH acting through Jorge Hernandez and Kristha Pineda replaced Mr. Gaitan and Ms. Echeverria as CEO and COO of the Company in late September or early October 2021," that "the actions of DTH … [were] attributable to … Terra and TBS … by reason of the affiliate relationships among them and DTH," and that DTH's actions breached sections 4.04(a)(vi) and 4.06(b) of the SHA. *Id.* at 1187. The panel issued an order on November 12 requiring that Gaitan and Echeverria be restored to their positions with the Company. On March 15, 2022, the panel found that Terra and DTH had failed to comply with the November 12 order and granted in part the minority shareholders' motion to compel compliance.

Telecom, Towers, and AMLQ petitioned the district court to confirm the FPFA. Terra and DTH argued that the FPFA should be vacated. The district court summarized the arguments of Terra and DTH as follows:

> First, Respondents claim that the Panel violated 'fundamental fairness' by refusing to provide them with 'a fair opportunity to be heard.' Second, Respondents argue that the panel acted in 'manifest disregard of the law' and in excess of its authority by granting specific performance to Petitioners. Third, Respondents claim that there was 'evident partiality' by two of the three arbitrators on the Panel in favor of Petitioners.

*Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 22-CV-1761, 2023 WL 257915, at *5 (S.D.N.Y. Jan. 18, 2023) (footnotes omitted). Terra and DTH's arguments focused on the panel's denial of discovery in the Phase 1 proceeding and the panel's decision to apply AAA Commercial Rule R-47(a)'s standard for granting specific performance rather than New York law. Rule R-47(a) states that "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract." AAA Commercial Rule R-47(a). Terra and

6

DTH also asked the court to vacate the November 12 and March 15 orders. On January 18, 2023, the district court entered judgment confirming the FPFA. The district court also held that the November 12 and March 15 orders were not judicially reviewable. This appeal followed.

## II

"This Court reviews a district court's decision to confirm or vacate an arbitration award *de novo* for questions of law. We review findings of fact for clear error." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 103 (2d Cir. 2013). "We review *de novo* the district court's application of the manifest disregard standard to an arbitration award." *Seneca Nation of Indians v. New York*, 988 F.3d 618, 625 (2d Cir. 2021) (emphasis added).

## III

Terra and DTH raise several arguments on appeal. First, Terra and DTH argue that the arbitration panel manifestly disregarded the law by declining to apply New York's standards for specific performance. Second, they claim that the arbitration procedure was fundamentally unfair because the district court denied them discovery on their affirmative defenses to specific performance and applied AAA Commercial Rule R-47(a) rather than New York law after the parties had briefed the specific performance issue on the assumption that New York law applied. Third, they argue that the November 12 and March 15 orders are judicially reviewable and should be vacated on the ground that those orders exceeded the arbitration panel's authority. We address each argument in turn.

## A

The Federal Arbitration Act ("FAA") provides that arbitration awards may be vacated when the arbitrators exhibit corruption, partiality, or misconduct or exceed their powers. *See* 9 U.S.C. § 10(a). In addition, "[w]e have held that 'as judicial gloss on the[] specific grounds for vacatur of arbitration awards' in the FAA, an arbitrator's 'manifest disregard' of the law or of the terms of the

7

arbitration agreement 'remains a valid ground for vacating arbitration awards.'" *Seneca Nation*, 988 F.3d at 625 (quoting *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451-52 (2d Cir. 2011)). "To succeed in challenging an award under the manifest disregard standard, a party must make 'a showing that the arbitrators knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it.'" *Id.* at 626 (quoting *Schwartz*, 665 F.3d at 452). "In addition to this 'subjective component,' a finding of manifest disregard requires an objective determination that the disregarded legal principle was 'well defined, explicit, and clearly applicable.'" *Id.* (quoting *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 209 (2d Cir. 2002)).

Terra and DTH cannot satisfy either component of the manifest disregard standard. With respect to the subjective component, the panel did not willfully flout law that it knew to be controlling. Rather, the panel considered—and rejected—Terra's argument that New York law, rather than AAA Commercial Rule R-47(a), determined its power to award specific performance. Moreover, as the district court noted, the panel "concluded that even if New York law governed the availability of specific performance, Petitioners had satisfied its requirements." *Telecom Bus. Sol.*, 2023 WL 257915, at *6; *see* App'x 830, 835, 838-42. Far from flouting New York law, the panel explained (1) its decision that AAA Commercial Rule R-47(a) applied and (2) its view that the application of New York law on specific performance would yield the same outcome.

With respect to the objective component, Terra and DTH cannot show that New York law clearly and explicitly prohibits parties from opting out of New York's specific performance law in favor of another standard. On the contrary, the New York Court of Appeals has held that "a court may not vacate an award because the arbitrator has exceeded the power the court would have" outside an arbitration proceeding; instead, "[t]hose who have chosen arbitration as their forum should recognize that arbitration procedures and awards often differ from what may be expected in courts of law." *Rochester City Sch. Dist. v. Rochester*

*Teachers Ass'n*, 362 N.E.2d 977, 981 (N.Y. 1977). Similarly, we have recognized that, "[l]ike federal law, New York law gives arbitrators substantial power to fashion remedies that they believe will do justice between the parties," including "fashion[ing] relief that a court might not properly grant." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 902 (2d Cir. 2015) (internal quotation marks omitted). In general, "[w]here an arbitration clause is broad, … arbitrators have the discretion to order remedies they determine appropriate, so long as they do not exceed the power granted to them by the contract itself." *Banca de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 262 (2d Cir. 2003). For these reasons, the district court correctly rejected Terra and DTH's claim that the arbitration panel displayed manifest disregard of the law.

**B**

Terra and DTH also argue that the arbitration procedure was fundamentally unfair. *See Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997) ("Federal courts do not superintend arbitration proceedings. Our review is restricted to determining whether the procedure was fundamentally unfair.") (quoting *Teamsters, Local Union 657 v. Stanley Structures, Inc.*, 735 F.2d 903, 906 (5th Cir. 1984)). It was fundamentally unfair, they suggest, because the panel did not apply New York law after "the entire proceeding was conducted with the understanding that the question of specific performance and associated defenses were governed by New York law." Appellants' Br. 19. Terra and DTH also assert that it was fundamentally unfair for the panel to make "findings of disputed fact in favor of Peppertree and AMLQ without affording Terra and DTH discovery to substantiate their affirmative defenses." *Id.*

Both arguments fail. Beginning with what Terra and DTH describe as the panel's "last-minute switch" from New York law to AAA Commercial Rule R-47(a), fundamental fairness requires only that the arbitrator "give each of the parties to the dispute an adequate opportunity to present its evidence and argument." *Tempo Shain*, 120 F.3d at 20 (quoting *Hoteles Condado Beach v. Union de*

9

*Tronquistas Local 901*, 763 F.2d 34, 39 (1st Cir. 1985)). Terra and DTH were on notice that the arbitration would be conducted in accordance with the AAA rules because the SHA provided as much. While the parties' initial briefing and the panel's orders may have focused on New York law, it was not unfair to expect the parties to be prepared to address Rule R-47(a) at argument. Moreover, as the minority shareholders observe, Terra and DTH "submitted two post-hearing briefs that addressed Phase 1 issues, one on December 9, 2021, and one on January 13, 2022," and thus "had multiple opportunities to address" the panel's suggestion that Rule R-47(a) rather than New York law might control. Appellees' Br. 28 (emphasis omitted). In addition, even after the panel adverted to Rule R-47(a) at oral argument, Terra and DTH continued to argue that New York law, not the AAA Commercial Rules, controlled; indeed, they still maintain this position on appeal. Terra and DTH were not prejudiced by the alleged "last-minute switch" because their litigation posture remained unchanged. And, as previously noted, the panel analyzed the specific performance issue under New York law in the alternative and arrived at the same conclusion.

The panel's decision to deny Terra and DTH discovery on their proffered affirmative defenses of unclean hands and waiver likewise did not render the procedure fundamentally unfair. The panel determined that discovery was unnecessary because Terra and DTH's factual allegations, even if substantiated, would not establish these affirmative defenses as a matter of law. With respect to waiver, the panel decided that the minority shareholders' failure to propose a resolution to the board to engage an investment bank within 30 days of the Proposed Sale Notice could not have been a waiver of its right to insist on a sale because the SHA did not require the minority shareholders to propose such a resolution. With respect to unclean hands, the panel decided that the text of the SHA "makes clear that the Parties intended that allegations of misconduct such as those made by Terra against the Peppertree Claimants would not and could not be invoked to prevent the … sale process from moving forward." App'x 844. The district court correctly deferred to the panel's interpretation of the parties'

contract. *See Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) ("An arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits.") (quoting *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)). Based on that interpretation, Terra and DTH could not prevail on their proposed affirmative defenses even assuming that evidence substantiated those defenses.

## C

The district court correctly concluded that the November 12 and March 15 orders were not judicially reviewable. "Under the Federal Arbitration Act, a district court does not have the power to review an interlocutory ruling by an arbitration panel." *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980). An interim order of an arbitration panel is final—and thus open to judicial review—only if it "finally and definitely disposes of a separate independent claim." *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986). The November 12 and March 15 orders—which were expressly designated as "interim relief," *see* App'x 1185, 1686—did not conclusively resolve the issues raised by DTH's actions with respect to Gaitan and Echeverria. The November 12 order expressly contemplated "further proceedings on the sufficiency of compliance with this Order, or the consequences of any non-compliance," and stated that the panel was "choosing not to prescribe the manner of compliance with this Order in greater detail at this time." *Id.* at 1188. The March 15 order likewise contemplated "additional proceedings concerning compliance with the Order of November 12, 2021 or with this Order." *Id.* at 1694. Indeed, in its motion for reconsideration of the November 12 order, Terra and DTH described the panel's conclusions as "*preliminary* finding[s]" and asserted that "[t]he interim order is certainly not a *final* award which has any binding impact on the final [Phase 1] hearing." *Id.* at 1192 & n.2 (emphasis added). At the time of the proceedings before the district court, "[i]ssues related to Respondents' non-compliance with the March 15 Order remain[ed] pending before the Panel and therefore [were] not final and reviewable." *Telecom Bus. Sol.*, 2023 WL 257915, at

11

*7. We note that AMLQ's counsel represented at oral argument that Terra and DTH are challenging the interim orders in their petition to vacate the panel's Second Partial Final Award. For these reasons, the district court correctly declined to review the panel's interim orders.

*    *    *

We have considered the appellants' remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court